UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Leo Guy d/b/a LTL Liquidators

          v.                        Civil No. 03-183-JD
                                    Opinion No. 2005 DNH 126
Starwood Hotels &
Resorts Worldwide, Inc., et al.


                     O R D E R

     The defendants, Starwood Hotels & Resorts Worldwide, Inc.,

and Westin Management Company North, have moved for summary

judgment on the plaintiff's breach of contract claim on the

grounds that (1) the parties never reached agreement on the

material terms of the alleged contract and (2) in any event, the

Statute of Frauds bars its enforcement.  The defendants have also

moved in limine to exclude evidence of the plaintiff's claim for

lost profits, either in whole or in part, arising out of the

alleged breach.  The plaintiff, Leo Guy d/b/a LTL Liquidators,

objects to both motions.


                     Background

     Guy buys and sells hotel furnishings under the name LTL

Liquidators, which has its office in Portsmouth, New Hampshire.

Early in the fall of 2002, Guy heard that the Westin Hotel in

Providence, Rhode Island, had embarked on a renovation project

and therefore wished to sell its existing guest room furniture.

The Rhode Island Convention Center Authority ("the CCA"), which owned the furnishings, had authorized Harry Jones, Westin's director of engineering, to sell them.  Through a telephone call to Jones's office, Guy learned that the renovation included 360 guest rooms but not the hotel's four presidential suites.

On October 21, 2002, Guy and one of his employees met with Jones at the hotel to inventory the furniture for purposes of preparing a bid.  Jones informed Guy during this meeting that the hotel wanted to remove the furniture on an aggressive schedule of fifty-four rooms every three weeks.  The next day, Guy faxed Jones a document on LTL letterhead entitled "Bid Proposal."  The document, bearing Guy's signature, stated that:

> LTL Liquidators has viewed the items to be removed from the Westin Hotel in Providence.  We are interested in the furniture, and submit a bid of $135.00 per room for the full and king rooms and $235.00 per room for the junior suites.  I understand the schedule to be approximately 54 rooms every three weeks starting in November.
>
> . . .
>
> We would pay with company check for each phase of 54 rooms prior to removing any items.  If LTL is the winning bid [*sic*] we will draft an agreement stating terms and conditions that are acceptable to both parties.

App. Supp. Mot. Summ. J., Ex. C, at 2.

Jones also received bids to purchase the furniture from other furniture liquidators.  After discussing the bids with the CCA's chairman, Jones's office informed Guy's office by telephone

2

that he had been selected as the winning bidder.  Jones later
spoke with Guy directly to inform him of this fact.  Guy did not
submit the written agreement contemplated by his proposal,
however, because he deemed it unnecessary in light of other
furniture liquidations he had handled for Westin.

In a November 13, 2002, call, Jones confirmed that Guy was
to retrieve the first fifty-four rooms' worth of furniture on
November 23 and 24.  Guy recalls that it was either in this call
or his initial conversation with Jones, confirming that Guy had
won the bid, that Jones said the hotel wished to donate fifty
rooms' worth of furniture to charity rather than selling them to
Guy.  In response, Guy requested that the hotel use the last of
the furniture removed from the building as the donation so as not
to delay his requisition.  Guy recalls that Jones said "this was
not a problem."[1]  Guy Aff. ¶ 11.  Jones, however, recalls having
said "the next pull, which was 54 rooms, would be the donation to
start."  Jones Dep. at 14.

Also on November 13, 2002, Jones sent Guy a fax enclosing a
schematic of each of the hotel's twenty-two floors and stating
"We will be starting on floors 4, 5, and 6."  Id., Ex. F.  Guy's
employees proceeded to remove the furniture from the first fifty-

---

[1]Guy also recalls a later conversation with Jones, at the
hotel itself, where he confirmed this arrangement and also
acceded to Guy's request that the donation encompass furniture
from king-size rooms only.

four rooms over November 23 and 24.  Guy promptly paid Westin for this furniture by check, which the company subsequently cashed.

Jones later informed Guy that he would not be able to retrieve the next fifty-four rooms' worth of furniture until after the holidays due to tightness and delays in the hotel's own schedule.  Guy and his employees repeatedly called Jones's office over the next two months to set a new date for the second phase of the removal, but could not get him to agree to one. Eventually, at some point in February, Jones told Guy that the second phase would occur over March 12 and 13, 2003.

On March 11, however, Jones informed Guy by telephone that "they were giving away all items and there was nothing left for [him] at the hotel."  Guy Aff. ¶ 17.  Guy asked Jones to put that in writing and he agreed.  But when Guy arrived at the hotel to retrieve the written statement, Jones left him waiting in the lobby for hours until Guy ultimately left.  Jones later told Guy that he would fax the statement but never did so.  Guy then brought this breach of contract action against Starwood, seeking damages in the form of $211,805 in lost profits arising out of its failure to sell him the balance of the hotel's furnishings.[2]

---

[2]After some discovery, Guy amended his complaint to add both Westin and the CCA as defendants.  This court later dismissed the CCA from the case for lack of personal jurisdiction.  2005 DNH 4, 2005 WL 23335 (D.N.H. Jan. 6, 2005).

I.   The Motion for Summary Judgment

    A.   Standard of Review

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, the court must then determine whether the non-moving party has demonstrated a triable issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.  E.g., J.G.M.C.J. Corp. v. Sears, Roebuck & Co., 391 F.3d 364, 368 (1st Cir. 2004); Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004).


    B.   Discussion

        1.   Whether the Parties Reached Agreement

 The defendants seek summary judgment on two independent grounds.  First, they argue that the record evidence "conclusively demonstrate[s]" that the parties never came to agreement on how much of the furniture would be included in the deal.  Mem. Supp. Mot. Summ. J. at 4.

The court disagrees.  Guy's written bid noted that he had "viewed the items to be removed from the Westin Hotel in Providence," which he knew from his conversation with Jones to include all the furniture, and that he was "interested in the

5

furniture . . . ."  App. Supp. Mot. Summ. J., Ex. C (emphasis
added).  Also in the written bid, Guy offered "$135.00 per room
for the full and king rooms and $235.00 for the junior suites" to
be retrieved on a schedule of "54 rooms every three weeks
. . . ."  Id.  Jones responded to this proposal by notifying Guy
that, simply, he was the winning bidder.[3]  This sequence of
events creates a genuine issue of fact as to whether the parties
reached agreement on a deal involving all the furniture.  See
Phillips v. Verax Corp., 138 N.H. 240, 245 (1994).[4]

_____

[3]As noted supra, Guy's recollection of his communications
with Jones around this time leaves open the possibility that he
informed Guy that he had won the bid and that the hotel wanted to
donate some of the furniture in the same conversation.  But
because this is merely a possibility, rather than an undisputed
fact, it does not affect the outcome on summary judgment.  In any
event, Guy also recalls an earlier communication from Jones's
secretary, who informed Guy that he was the winning bidder
without any mention of donating some of the furniture.

[4]Neither party's summary judgment briefing addresses whether
New Hampshire or Rhode Island law should apply in this matter.
The defendants' memorandum cites case law from both states, while
Guy's cites only New Hampshire law.  Under New Hampshire choice-
of-law rules, which govern this diversity action brought in a New
Hampshire forum, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S.
487, 491 (1941), the law of the forum state applies in the
absence of an actual conflict with the law of another state
having an interest in the matter.  Keeton v. Hustler Magazine,
Inc., 131 N.H. 6, 13 (1988).  Because neither party has
demonstrated such a conflict, the court will apply New Hampshire
law.  See, e.g., Daroczi v. Vt. Ctr. for the Deaf & Hard of
Hearing, Inc., 2004 WL 180250, at *8 (D.N.H. Jan. 28, 2004); SIG
Arms, Inc. v. Employers Ins. of Wasau, 122 F. Supp. 2d 255, 259
(D.N.H. 2000).

The fact that the bid contemplated a further writing which never came into existence does not, as the defendants suggest, establish as a matter of law that the parties did not intend to be bound without one.  An enforceable agreement results under New Hampshire law when the parties "manifest[] their intent to be bound to the essential terms of a more detailed forthcoming agreement" even if the more detailed agreement never materializes.  <u>Lower Vill. Hydroelec. Assocs., L.P. v. City of Claremont</u>, 147 N.H. 73, 76 (2001).  Based on Guy's version of events, that is what happened here when Jones accepted the bid. The absence of the further writing referenced in the bid therefore does not support the defendants' argument that the parties did not reach agreement.[5]  <u>See</u> <u>id.</u> at 76 (upholding

---

[5]The defendants rely on two First Circuit cases for the proposition that "the contemplation of a formal, written contract 'gives rise to a strong inference that the parties do not intend to be bound until the formal document is hammered out.'"  Mem. Supp. Mot. Summ. J. at 5 (quoting <u>Gel Sys. Inc. v. Hyundai Eng'g & Constr. Co.,</u> 902 F.2d 1024, 1027 (1st Cir. 1992)).  Although that statement indeed appears in the <u>Gel Sys.</u> opinion, the court there also noted that "[i]f all material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted . . . is a mere memorial of the contract already final by the earlier mutual assent of the parties to those terms."  902 F.2d at 1027–1028 (internal quotation marks omitted).  Because there is evidence to that effect here, the defendants' incomplete quotation from <u>Gel Sys.</u> is inapposite.  The same is true of the other circuit case the defendants cite on this point, in which "the evidence show[ed] that [the defendant] did not intend to be bound by any contractual relationship until the final contract was reduced to writing and signed by both parties."  <u>Theta Prods., Inc. v. Zippo</u>

7

conclusion that contract existed based on offeree's communication of acceptance even though it also indicated parties would execute further written agreement); see also Trimount Bituminous Prods. Co. v. Chittenden Trust Co., 117 N.H. 946, 950-51 (1978).

Although the summary judgment record reveals that Guy and Jones discussed modifying the alleged agreement so that Westin would donate some of the furniture rather than selling it to Guy, see also Am. Compl. ¶ 12, there is also a genuine issue of fact as to whether the parties reached an understanding on how much. Guy recalls that he assented to Jones's request to donate fifty rooms' worth of furniture. His testimony to this effect therefore constitutes proof of an agreement on the quantity of furniture to be donated sufficient to avoid summary judgment on this issue. Contrary to the defendants' suggestion, the fact that Jones might have intended to leave the ultimate size of the donation to be decided down the road does not mean that the parties did not reach agreement as a matter of law. "When a court determines whether such a mutual understanding exists, the evidence is viewed objectively; undisclosed meanings and intentions are immaterial in arriving at the existence of a

---

Mfg. Co., 8 Fed. Appx. 3, 6 (1st Cir. 2001) (unpublished disposition). Again, there is evidence to the contrary here.

contract . . . ."[6]  <u>Simonds v. City of Manchester</u>, 141 N.H. 742,
744 (1997) (internal quotation marks omitted).

     2.   Whether the Statute of Frauds Bars Guy's Claim

The defendants also seek summary judgment on the basis of
N.H. Rev. Stat. Ann. § 382-A:2-201, New Hampshire's version of
the statute of frauds provision from Article 2 of the Uniform
Commercial Code.  In relevant part, this provision states:

> Except as otherwise provided in this section a contract
> for the sale of goods for the price of $500 or more is
> not enforceable by way of action or defense unless
> there is some writing sufficient to indicate that a
> contract for sale has been made between the parties and
> signed by the party against whom enforcement is sought
> or by his authorized agent or broker.

<u>Id.</u> § 382-A:2-201(1).  The defendants argue that there is no
evidence of such a writing in this case.

Guy does not dispute that this provision applies to his
transaction with the defendants, but relies on the exception to
Article 2-201 set forth in subsection (3)(b).  Under this
exception, a contract which does not meet the requirements of

---

     [6]For the same reason, the November 15, 2002, memorandum to
Jones from the CCA's executive director stating his understanding
that "[f]urther negotiation with the liquidator will commence
when you have defined the scope of total pieces to be donated,"
App. Supp. Mot. Summ. J., Ex. D, does not entitle the defendants
to summary judgment on the ground that the parties failed to
reach agreement on this point.  At most, this document reflects
the executive director's second-hand understanding of the status
of Jones's negotiations with Guy.

Article 201–1 is nevertheless enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted." Id. § 382–A:2–201(3)(b). Guy argues that Jones testified at his deposition in this case that he accepted Guy's bid to purchase all the furniture from the hotel, triggering subsection (3)(b).

As Guy points out, Jones testified that the defendants were replacing the furniture in 360 of the hotel's guest rooms. Jones Dep. at 10. When asked what he had decided to do with "the existing furnishings," Jones answered that he solicited "bids for liquidation of the furniture from several liquidators . . ." and that he selected Guy as the winning bidder, notifying him of this decision by telephone. Id. at 11–12. Jones added that he reviewed Guy's written bid before making the call. Id. at 12. As the court has previously noted, there is evidence that the written bid was an offer for all of the furniture and was accepted as such by Jones.

The court agrees that a genuine issue of fact remains as to whether Jones's testimony constitutes an admission that the parties entered into a contract for the sale of all of the hotel's guest room furniture. As one Code commentator has noted, subsection (b)(3) does not require "an express declaration in

10

which the party admits the making of the oral contract." 1

William D. Hawkland, Hawkland's Uniform Commercial Code Series §

2-201:6 n.1 (1982) (internal quotation marks omitted).  Instead,

> UCC 2-201(3)(b) is satisfied when the party, who has
> denied the existence of an oral contract in reliance on
> the statute . . . without admitting explicitly that a
> contract was made, testifies as to his statements or
> his actions which establish the terms of the oral
> contract claimed by the opposing party . . . .  It is
> sufficient if his words or admitted conduct reasonably
> lead to that conclusion.

Id. (internal quotation marks omitted); accord Gestetner Corp. v.

Case Equip. Co., 815 F.2d 806, 809 (1st Cir. 1987) (finding

evidence sufficient to satisfy Article 2-201(3)(b) under Maine

law where president of defendant to counterclaim alleging breach

of distributorship agreement testified to his understanding that

counterclaimant was "independent dealer" marketing his company's

products).  Under this standard, Jones's deposition testimony

suffices to preclude summary judgment on whether the defendants

have admitted the making of a contract for the sale of all the

guest room furniture so as to trigger the statute of frauds

exception set forth in subsection (b)(3).  See Oskey Gasoline &

Oil Co. v. Cont. Oil Co., 534 F.2d 1281, 1284-85 (8th Cir. 1976)

(reversing summary judgment for seller under Minnesota's version

of Article 2-201 where seller's manager testified that he had

responded to the buyer's expressed interest in purchasing up to

50 million gallons of fuel annually by expressing interest in

selling it, and that he had "'agreed to sell it,'" creating

triable issue as to whether testimony constituted admission to

making alleged contract within meaning of Article 2-201(b)(3)).[7]


II.  <u>The Motion in Limine</u>

The defendants have also moved to exclude Guy's claim for

lost profits in its entirety or, alternatively, "to the degree it

is not supported by any past or actual course of dealing as

documented through evidence provided in discovery," Mot. in

Limine at 3, on the ground that the claim is too uncertain to

permit recovery under New Hampshire law.  Specifically, the

defendants argue that Guy has no documentation to support his

theory that he would have been able to resell half of the

furniture to be purchased from the defendants at specified retail

prices, as opposed to the lower wholesale prices at which Guy had

actually agreed to sell some of the furniture to a number of

customers.  <u>See</u> <u>id.</u> Ex. B.[8]

---

[7]The defendants argue in their reply brief that subsection
(b)(3) cannot apply because it allows enforcement of an oral
contract only to the extent of "the quantity of goods admitted"
and the parties never reached agreement as to the quantity of
furniture to be sold.  As previously discussed, however, Jones's
deposition testimony creates an issue of fact as to whether he
has admitted to making a contract to sell all 360 rooms' worth of
furniture to Guy.  <u>See</u> <u>Oskey Gasoline & Oil</u>, 534 F.2d at 1285.

[8]Given this documentary evidence that Guy had secured
contracts to sell a significant portion of the furniture at the

In response, Guy has submitted an affidavit outlining his
experience as a retailer of used hotel furniture.  Drawing on
that experience, Guy estimated both the proportion of furniture
from the Westin to be sold at retail based on what he perceived
as "the high quality of the furniture."  Guy Aff. Supp. Obj. Mot.
in Limine at 2.  Furthermore, Guy explains that he estimated the
retail prices of the furniture based on what he got for nine
rooms' worth that he was able to retrieve from the hotel in
November, 2002.  Id. at 3.  Guy has therefore articulated a
sufficient basis to be allowed to present his estimate of his
lost profits at trial.  See Indep. Mech. Contractors v. Gordon T.
Burke & Sons, Inc., 138 N.H. 110, 115-18 (1994) (upholding award
of lost profits based on projection from actual past earnings).
Accordingly, the defendants' questions about the accuracy of the
estimate can be addressed through cross-examination.

---

wholesale price of $425 per room, it is unclear what basis the
defendants have for moving to exclude the claim for lost profits
in its entirety.  Indeed, these contracts would appear to
constitute precisely the "specific information regarding
prospective purchases at the prices claimed" which the defendants
contend is necessary to support lost profits under New Hampshire
law.  Mot. in Limine at 3.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 25) and in limine (document no. 32) are DENIED.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 7, 2005
cc:  John E. Friberg. Esqiore
     Paul McEachern, Esquire
     Courtney Worcester, Esquire

14